UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ROBERT C. K. PENG,<br><br>Plaintiff,<br><br>v.<br><br>NORTHWESTERN MUTUAL LIFE INSURANCE CO.,<br><br>Defendant. | Case No. 17-cv-01760-SI<br><br>**ORDER RE: DISCOVERY DISPUTE (FIFTH)**<br><br>Re: Dkt. No. 52 |

Now before the Court is the parties' fifth discovery dispute letter, which was discussed during the March 2, 2018 case management conference. *See* Dkt. No. 52 ("Joint Statement"). As discussed at the conference, the Court hereby ORDERS as follows.

**I.  Mental Health Information**

On July 14, 2017, the Court ruled on the parties' first discovery dispute. Dkt. No. 30. That dispute involved plaintiff's motion to quash defendant's third-party subpoena to Kaiser Permanente that sought "all psychiatric documents" and related records. The Court denied plaintiff's motion to quash, finding that plaintiff put his medical records, including his psychiatric records, sufficiently at issue to waive any claim of privilege. Dkt. No. 30 at 4. However, the Court modified the dates for the requested information to "January 1, 2012 to the present date, and from on or 10 years prior to February 8, 1996."[1] *Id.* at 5.

---

[1] The cut-off date of 10 years prior to February 8, 1996, derives from defendant's argument that plaintiff "denied any psychiatric diagnosis and any mental health treatment in the past ten years" on his initial February 8, 1996 application for a disability insurance policy. Dkt. No. 26-1 at 2-4.

In the current dispute, defendant is seeking mental health information from plaintiff that pre-dates February 1986. Plaintiff, meanwhile, argues that he should not have to produce mental health information for the dates between February 1996 and January 2012. At the case management conference, defendant stated that it had arbitrarily selected the January 2012 cut-off date in its initial requests and that subsequent discovery has revealed the need for further mental health records. Specifically, "Plaintiff's treating psychiatrist testified at her deposition that Plaintiff's treatment went back to before 2007." Joint Statement at 3 n.5.

The Court clarifies that its prior order contained specific cut-off dates in response to the issues raised by the motion to quash. As previously stated in the Court's first Order Re: Discovery Dispute, plaintiff has put his medical records, including his mental health, at issue by filing for disability insurance benefits and by filing this lawsuit. Defendant states that it is continuing to investigate the question of rescission, and that the records it requests are relevant.[2] The Court agrees. The Court also agrees with plaintiff that, because his initial application for insurance sought information from ten years prior, his responses need not encompass information prior to February 8, 1986. Plaintiff is therefore ordered to respond to discovery requests regarding his mental health, from the dates of February 8, 1986, to the present. Plaintiff shall accordingly authorize defendant to obtain his medical/mental health records from Kaiser Permanente from February 8, 1986, to present.[3]

---

[2] Among other affirmative defenses, defendant alleges that plaintiff "fraudulently misrepresented and[/]or concealed material information in his application for the insurance coverage issued by Northwestern Mutual such that the coverage is subject to rescission." Dkt. No. 17.

[3] The parties have attached as an exhibit the authorization form that defendant requests plaintiff sign. It authorizes the release of medical records from Kaiser Permanente "from inception of mental health treatment to January 1, 2012." Joint Statement, Ex. C. Because this release could in theory encompass records prior to February 1986, the Court reiterates that it is not ordering the release of mental health records prior to February 8, 1986.

## II. Financial Information

Defendant also seeks plaintiff's financial information. The parties' second discovery dispute arose from plaintiff's objections to defendant's requests for production of plaintiff's tax returns. Dkt. No. 34. The Court ruled the information relevant and ordered plaintiff to produce his tax returns, pursuant to the protective order on file in this case. Dkt. No. 37. The parties now dispute whether plaintiff must also disclose his passive income, such as real estate holdings and brokerage accounts.

The Court finds that plaintiff has not placed his passive income at issue and therefore it is not relevant to this case. Nowhere in the Amended Complaint does plaintiff allege he has suffered a loss to his passive income because of the actions of defendant, nor does his allege that he suffered any emotional distress due to the financial burden of not receiving full payment on his disability policies. At the case management conference, counsel for plaintiff affirmed that he would not seek to present at trial any argument that plaintiff suffered a financial hardship or attendant emotional distress as a result of defendant's failure to pay his policy benefits. Moreover, plaintiff has already submitted to defendant his personal income tax returns.

The Court accordingly finds that evidence of plaintiff's passive income is not relevant and need not be produced to defendant. As discussed at the case management conference, plaintiff will be precluded from seeking to introduce evidence of financial distress at trial.

## III. Remaining Disputes

The Court previously ordered plaintiff to produce documentation of the sale of his dental practice. Dkt. No. 37. To the extent he has not yet done so, the Court again orders plaintiff to produce the requested information regarding the sale of the dental practice.

To the extent that this Order does not address all of the discovery disputes on which the parties seek a ruling, the Court refers the parties to the undersigned's Standing Order. The Standing Order requires parties to meet and confer in person or by telephone to resolve their

dispute.[4] Standing Order ¶ 3. "A mere exchange of letters, e-mails, telephone calls, or facsimile transmissions does not satisfy the requirement to meet and confer." *Id.* "If, after a good faith effort, the parties have not resolved their dispute, they shall prepare a concise joint statement of 5 pages or less, **stating the nature and status of their dispute.**" *Id.* (emphasis added). At present, the Court has been left to guess as to the nature of the dispute on certain discovery requests, as neither party clearly outlines what issues need resolving. Simply attaching written discovery requests will not suffice, particularly where, as here, the attached responses pre-date the Court's ruling on several discovery disputes. *See* Joint Statement, Ex. A, B (dated Sept. 5, 2017); Dkt. No. 37 (filed Oct. 11, 2017). The Court will not hear any further discovery disputes unless the parties comply with the Standing Order in all respects.

**IT IS SO ORDERED**.

Dated: March 5, 2018

SUSAN ILLSTON
United States District Judge

---

[4] It is unclear whether the parties here complied with the requirement to meet and confer prior to filing the present discovery dispute letter with the Court.

4